ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| TOMÁS GONZÁLEZ GONZÁLEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400688 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. 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 |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de enero de 2025.

I.

El 3 de diciembre de 2024, el Sr. Tomás González González acudió ante nos por derecho propio mediante un escrito que intituló *Moción.* Expresa, que, el 20 de septiembre de 2024, una oficial de corrección de la Institución Correccional las Cucharas de Ponce donde se encuentra confinado, le presentó cuatro cargos o actos prohibidos, mediante la Querella Núm. 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.[1] González González relata que, luego de llevarse a cabo los trámites administrativos correspondientes, entre ellos, la vista celebrada el 24 de octubre de 2024, se le encontró incurso en la violación de los códigos 204 (disturbios); 207 (uso de lenguaje abusivo u obsceno); 216 (sobre estar ausente en el recuento o interferir con el recuento) y 233 (desobedecer una orden directa del Reglamento para establecer el procedimiento disciplinario de la Población Correccional).[2]

---

[1] Identificó los cargos con los códigos 204, 207, 216 y 233 del Reglamento Disciplinario para la Población Correccional, Núm. 7748 de 23 de septiembre de 2009,[1] según enmendado.
[2] *Id.*

Según indica, el 1 de noviembre de 2024 solicito sin éxito,[3] reconsideración, por lo que, el 3 de diciembre de 2024,[4] también por derecho propio, incoo el recurso de epígrafe. Plantea:

> Que erró el Departamento de Corrección al imponerle una sanción disciplinaria sin realizar la investigación correspondiente, conforme a la Regla 12 del Reglamento Núm. 9221 de 8 de octubre de 2020.[5]

II.

A.

La Constitución del Estado Libre Asociado de Puerto Rico, Art. VI, Sección 19, establece como política pública del gobierno reglamentar las instituciones correccionales de modo que sirvan efectivamente sus propósitos y faciliten el tratamiento adecuado de su población, que haga posible su rehabilitación moral y social.[6] Corolario de dicha política pública, el Plan de Reorganización del Departamento de Corrección y Rehabilitación, Plan de Reorganización Núm. 2 de 2011,[7] dispone para que la agencia diseñe y formule la reglamentación interna para los distintos programas de diagnóstico, clasificación, tratamiento y rehabilitación de los miembros de la población penal.[8]

El Departamento de Corrección y Rehabilitación aprobó el *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*.[9] El mismo constituye un mecanismo para

---

[3] La reconsideración fue recibida por la Oficina Disciplina de Confinados el 13 de noviembre de 2024.

[4] El recurso cuenta con el matasellos del Tribunal de Apelaciones con fecha del 13 de diciembre de 2024. No obstante, conforme a nuestro Reglamento y según resuelto en *Alamo Romero* v. *Adm. Corrección*, 175 DPR 314, 323 (2009) entendemos que el recurso fue presentado en la fecha de entrega a la institución carcelaria. ("En los casos de revisión judicial de decisiones administrativas de la Administración de Corrección en procedimientos disciplinarios instados por reclusos por derecho propio, se entenderá que el recurso fue presentado en la fecha de entrega a la institución carcelaria. Esta autoridad será responsable, a su vez, de tramitar el envío del recurso al foro correspondiente").

[5] Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221 R.12 (8 de octubre de 2020).

[6] Art. VI, sec. 19, CONST. PR, LPRA, Tomo 1.

[7] 3 LPRA Ap. XVIII. Creado al amparo de la Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009, Ley Núm. 182–2009.

[8] *Id.*, Art. 4-5.

[9] Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221 (8 de octubre de 2020).

imponer medidas disciplinarias a aquellos confinados que violen las normas y procedimientos establecidos en las instituciones bajo la jurisdicción del Departamento de Corrección y Rehabilitación, de forma que se mantenga la seguridad y el orden en dichas instituciones. El referido Reglamento aplica a todos los confinados sumariados o sentenciados que cometan o intenten cometer un acto prohibido en cualquier institución bajo la jurisdicción de la Departamento de Corrección.[10]

En lo pertinente, el Reglamento Núm. 9221 define "acto prohibido" como "cualquier acto que implique una violación a las normas de conducta de la institución que conlleve la imposición de medidas disciplinarias, incluyendo cualquier acto u omisión, o conducta tipificada como delito".[11] Una vez se determina que un confinado ha incurrido en el acto prohibido que se le haya imputado, procede la imposición de una sanción disciplinaria.[12]

La Regla 15 especifica cuáles son las conductas de la población correccional que se entienden prohibidas.[13] En lo que aquí compete, el Código 204 establece como un acto prohibido sujeto a sanción lo siguiente:

> Disturbios: consiste en perturbar la paz, la tranquilidad, la seguridad y el funcionamiento institucional por medio de gritos, vituperios, conducta tumultuosa, desafíos y provocaciones, sin causar daños a la persona o la propiedad.[14]

A su vez, mediante el Código 207 "se prohíbe el uso de lenguaje de mal gusto, grosero, palabras soeces, carente de educación, cortesía o delicadeza".[15] Asimismo, el Código 216 "prohíbe faltar, esconderse o ausentarse durante un recuento o paralizar, impedir, obstaculizar entorpecer un recuento".[16] Por otra

---

[10] *Id.* R. 3.
[11] *Id.* R. 4 (1).
[12] *Id.* R. 17.
[13] *Id.* R. 15.
[14] *Id.*
[15] *Id.*
[16] *Id.*

parte, el Código 233 hace referencia a desobedecer una orden directa. De manera que, hace referencia a "desobedecer, ignorar o rehusarse a seguir una orden directa válida emitida por parte de un empleado del DCR o que firme como su representante para dicha gestión".[17] Incluye sin limitarse:

> a. Desobedecer cualquier directriz administrativa; o
> b. Negarse a recoger artículos o basura que el propio miembro de la población correccional haya colocado, tirado, escondido o botado en un área no destinada para ello.[18]

Sobre las querellas, la Regla 6 dispone que, un oficial correccional podrá presentar una *querella* cuando sea testigo de un incidente o infracción de las normas y reglamentos de la Administración de Corrección por parte de un confinado. [19]  En cuanto al contenido de la Querella, la Regla 6 (A) del Reglamento Núm. 9221 establece:

> La querella disciplinaria se redactará en letra legible, y contendrá la siguiente información:
> 1. Una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente;
> 2. Nombre del miembro de la población correccional querellado;
> 3. Nombres de los testigos, si alguno;
> 4. La prueba obtenida;
> 5. Manejo de la prueba;
> 6. Nivel y código correspondiente al acto prohibido imputado;
> 7. Nombre del querellante;
> 8. Identificación precisa del querellante (puesto, número de placa, posición, lugar de trabajo);
> 9. Fecha de radicación de querella disciplinaria;
> 10.     Si se obtuvo algún tipo de información confidencial, proceder de acuerdo con la dispuesto en la Regla 31 y la Regla 32 de este Reglamento.[20]

La Regla 6 (D) del referido Reglamento establece:

> 1. Se notificará por escrito al miembro de la población correccional del acto prohibido que se le imputa, determinado según las normas de conducta establecidas en este Reglamento.

---

[17] *Id.*
[18] *Id.*
[19] *Id.* R. 6.
[20] *Id.* R. 6 (A).

2. La notificación deberá ser clara y específica, precisando los hechos y acciones que constituyen la violación a las reglas y normas de conducta impuestas por el Reglamento.

3. Se incluirá la disposición que fue infringida y se advertirá al miembro de la población correccional que se referirá su caso para la celebración de vista administrativa, cuya fecha se le notificará más adelante.[21]

Según contemplado en la Regla 12 del aludido Reglamento, una vez se presenta una querella, esta es asignada a un oficial de querellas, quien deberá conducir la investigación correspondiente.[22] En los casos en los que se impute la comisión de un acto prohibido, el oficial de querellas referirá el caso al oficial examinador de vistas disciplinarias para el señalamiento y la celebración de la vista.[23] Asimismo, el oficial examinador evaluará y adjudicará la querella disciplinaria, luego de lo cual impondrá las sanciones que, a su discreción, entienda correspondientes.[24] Además, establece que los procedimientos inherentes a la investigación son los siguientes:

1. Entrevistar e interrogar a toda persona relacionada, directa o indirectamente con los hechos imputados, incluyendo al miembro de la población correccional querellado o los testigos solicitados por este.

2. El querellado debe ser orientado sobre su derecho a guardar silencio y podrá recibir asistencia del oficial de querellas.

3. Si el querellado quiere hacer una declaración, podrá completar el formulario correspondiente. Si el querellado no sabe leer o escribir, el Oficial de Querellas deberá tomar la declaración de manera detallada, con cualquier información adicional que puede observar con respecto al comportamiento del miembro de la población correccional durante la entrevista.

4. El Oficial de Querellas deberá investigar en detalle la versión de hechos presentada por el querellado.

5. El Oficial de Querellas le facilitará el formulario correspondiente y obtendrá las declaraciones de estos testigos; y las respuestas a las preguntas formuladas por el miembro de la población correccional.

6. El Oficial de Querellas deberá registrar tas declaraciones de tos testigos de manera exacta y detallada. No obstante, los testigos tienen la opción de presentar su declaración por escrito o responder directamente a las preguntas realizadas.

---

[21] *Id.* R. 6 (D).
[22] *Id.* R. 12.
[23] *Id.* R. 13.
[24] *Id.* R. 28.

7. El Oficial de Querellas verificará el manejo y disposición correcta de la prueba/evidencia y preparará un informe de ello.

8. El Oficial de Querellas podrá comentar sobre asuntos que haya podido percibir personalmente durante la investigación, incluyendo, pero sin limitarse, al comportamiento o el semblante del querellado o de un testigo, aspectos de la distribución de la planta física do la institución correccional u otros similares que puedan ser pertinentes al caso.

9. El Oficial de Querellas redactará un informe completo y detallado que contenga tas declaraciones de todos los testigos y la prueba/evidencia recopilada.

10. De ser necesario, el Oficial de Querellas podrá solicitar información a la Unidad de Servicios Socio penales, Unidad de Récord Criminal, Programa de Comunidad, Programa de Desvío y Comunitarios y Área Médica.

11. Los parámetros para el uso y el manejo de información confidencial se encuentran en la Regla 31 y Regla 32 de este Reglamento.

12. Si el Oficial de Querellas presenció o tiene conocimiento personal del incidente que se encuentra ante su consideración para la correspondiente investigación, deberá inhibirse de ese caso en particular, y otro Oficial de Querellas que esté asignado a la institución tomará la investigación a su cargo. En el caso que no haya otro Oficial de Querella de la misma institución podrá asistirle uno de otra institución correccional.[25]

Por otro lado, la Regla 31 atiende lo pertinente a la presentación de testigos durante la vista ante el Oficial Examinador. Dispone como sigue:

1. El Oficial Examinador y el miembro de la población correccional querellado podrán solicitar la presencia de testigos que tengan información pertinente y estén razonablemente disponibles.

2. En aquellos casos en los que el testigo sea excluido, ya sea por declaración o en persona, la base de esta exclusión debe ser documentada por el Oficial Examinador.

3. **No será necesaria ni se solicitará la comparecencia de testigos para presentar evidencia repetitiva, ni testigos adversos, cuando su conocimiento sobre el incidente surja de manera clara de la querella disciplinaria, documentos complementarios o del informe del Oficial de Querellas.**

4. La presencia del querellante en la vista disciplinaria es un asunto oficial de estricto cumplimiento, cuando así sea requerido.

5. Si durante el proceso de vista administrativa surge alguna duda adicional relacionada a la querella disciplinaria o a la declaración de algún testigo, se podrá requerir la presencia en la vista disciplinaria.

---

[25] *Id.* R. 12.

6. El miembro de la población correccional imputado de un acto prohibido tendrá el derecho de presentar prueba y declaraciones de testigos a su favor, siempre y cuando no entre en riesgo la seguridad de la institución, la del miembro de la población correccional perjudicado o la de cualquier otra persona.

7. El número de declaraciones y de testigos que se presentarán en la vista dependerá de las circunstancias particulares del caso y la información que estos posean. **El Oficial Examinador puede excluir las declaraciones de testigos o rehusar llamar a declarar a un testigo por los siguientes fundamentos:**
    **a. El testimonio no es pertinente**
    **b. El testimonio es innecesario.**
    **c. Cuando el testimonio resulta repetitivo.**[26]

B.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), dispone el alcance de la revisión judicial de las determinaciones de las agencias. [27] Tanto la referida Ley como la jurisprudencia aplicable establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.[28] Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado.[29] Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas.[30]

Es por estas razones que, como principio axiomático, las decisiones de los foros administrativos están investidos de una presunción de regularidad y corrección.[31] La presunción de

---

[26] *Id.* R. 31 (énfasis nuestro).
[27] Ley Núm. 38-2017.
[28] *T–JAC* v. *Caguas Centrum,* 148 DPR 70 (1999).
[29] *Mun. de San Juan* v. *Plaza Las Américas,* 169 DPR 310, 323 (2006); *Hernández Álvarez* v. *Centro Unido,* 168 DPR 592, 615–616 (2006).
[30] *Metropolitana, S.E.* v. *ARPE,* 138 DPR 200, 213 (1995); *Viajes Gallardo* v. *Clavell,* 131 DPR 275, 289–290 (1992).
[31] *García* v. *Cruz Auto Corp.,* 173 DPR 870 (2008); *Vélez* v. *ARPE,* 167 DPR 684 (2006); *Rivera Concepción* v. *ARPE,* 152 DPR 116, 123 (2000).

corrección que acarrea una decisión administrativa, deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo.[32] Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de estas.[33]

Asimismo, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia.[34] Hay que determinar si la agencia actuó arbitraria o ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción.[35] Utilizando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad".[36]

A estos fines, se ha definido evidencia sustancial como "aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión".[37] Para establecer la alegación de ausencia de tal evidencia sustancial, la parte afectada debe demostrar que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial hasta el punto que se

---

[32] *E.L.A.* v. *P.M.C.*, 163 DPR 478 (2004); *Misión Ind. P.R.* v. *Junta de Planificación*, 146 DPR 64, 130 (1998); *ARPE* v. *Junta de Apelaciones sobre Construcciones y Lotificaciones*, 124 DPR 858 (1989).

[33] *Rivera Concepción* v. *ARPE*, en la pág. 163; *Fac. C. Soc. Aplicadas, Inc.* v. *C.E.S.*, 133 DPR 521 (1993).

[34] *Rebollo Vda. de Liceaga* v. *Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69 (2004).

[35] *Asociación de Vecinos Tulip/Monteverde, Inc.* v. *Junta de Planificación*, 171 DPR 863 (2007); *Marina Costa Azul* v. *Comisión*, 170 DPR 847 (2007).

[36] *Otero Mercado* v. *Toyota de P.R. Corp.*, 163 DPR 716 (2005); *Domingo Talavera* v. *Caguas Express way Motors, Inc.*, 148 DPR 387 (1999).

[37] *Ramírez* v. *Depto. de Salud*, 147 DPR 901, 905 (1999).

demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba".[38]

En otras palabras, la parte recurrente viene obligada a derrotar la presunción de corrección de los procesos y de las decisiones administrativas.[39] Para lograr ese objetivo, tiene que demostrar que existe otra prueba en el récord que menoscabe el valor probatorio de la evidencia impugnada. Si la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor.[40]

III.

Examinados sus planteamientos, el Sr. González González no logró persuadirnos de que se haya incumplido con el procedimiento establecido en el Reglamento Disciplinario para la ventilación de una *Querella* en violación a su debido proceso de ley o que el procedimiento haya sido injusto. Como hemos visto, el marco jurídico antes expuesto dispone que, "no será necesaria ni se solicitará la comparecencia de testigos para presentar evidencia repetitiva, ni testigos adversos, cuando su conocimiento sobre el incidente surja de manera clara de la querella disciplinaria, documentos complementarios o del informe del Oficial de Querellas".[41] Además, el Oficial Examinador puede excluir testigos, ya sea por pertinencia, no es necesario o es repetitivo.[42]

González González tampoco ha demostrado que la decisión recurrida fuese irrazonable o arbitraria, ni que la evidencia sustancial que obra en el expediente sea falsa o insuficiente para sancionarlo por los actos prohibidos. De nuestra parte, en la

---

[38] *Metropolitana S.E.* v. *ARPE*, 138 DPR en la pág. 213.
[39] *Fac. C. Soc. Aplicadas, Inc.* v. *C.E.S.*, 133 DPR en la pág. 532.
[40] *Ramírez* v. *Depto. de Salud*, 147 DPR en la pág. 905.
[41] Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Núm. 9221 R. 31 (8 de octubre de 2020).
[42] *Id.*

investigación de los hechos o en la determinación de la Oficial Examinador no detectamos indicio alguno de pasión, prejuicio, parcialidad, arbitrariedad o error manifiesto. En ausencia de criterios para hacerlo, no podemos, por deferencia administrativa, descartar la determinación de la Oficial Examinadora y sustituirla por la nuestra. La determinación es razonable y se sostiene en la evidencia sustancial que obra en el expediente.

IV.

Por los fundamentos antes expuestos, se *confirma* la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones